Stephen H.M. Bloch (# 7813)
Joseph J. Bushyhead (# 15046)
Michelle White (# 16985)
**SOUTHERN UTAH WILDERNESS ALLIANCE**
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
joe@suwa.org
michellew@suwa.org

Trevor J. Lee (# 16703)
**MANNING CURTIS BRADSHAW & BEDNAR**
136 E. South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone: (801) 363-5678
tlee@mc2b.com

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT, and HARRY BARBER, in his official capacity as Paria River District Manager,<br><br>  Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No. 2:20cv539 JCB<br>Magistrate Judge Jared C. Bennett |

1.	This lawsuit challenges the Bureau of Land Management's ("BLM") arbitrary decision that Kane County, Utah's ("Kane County") proposed construction and installation of a new bridge across Bull Valley Gorge along the Skutumpah Road was maintenance, as opposed to improvement, of the road. BLM reached this decision despite that the former bridge was made of packed dirt whereas the new, engineered bridge has concrete footings, a metal travel surface, and requires an altered vertical alignment, among other improvements. BLM's erroneous decision was arbitrary and capricious, and it violated BLM's duties according to the Federal Land Policy and Management Act ("FLPMA") and its implementing regulations, along with BLM's own policies.

2.	Because BLM reached this erroneous conclusion, it allowed Kane County to commence construction activities without first determining whether the improvement was within the scope of the county's R.S. 2477 right-of-way over the road or complying with its duties to protect the surrounding lands in accordance with FLPMA. This arbitrary and capricious decision similarly violated FLPMA, its implementing regulations, and BLM's own policies.

3.	This lawsuit also challenges BLM's decision to allow construction activities without first complying with the National Environmental Policy Act ("NEPA") and its implementing regulations. NEPA and its regulations require BLM to follow the precautionary principle of "think first, then act." Instead, BLM authorized the County to proceed without first considering the impacts of that decision.

4.	At issue in this case is the section of the Skutumpah Road which crosses Bull Valley Gorge within the Grand Staircase-Escalante National Monument as established by President Clinton, and which currently forms the boundary of the reduced Monument's "Grand

Staircase unit," as established by President Trump. This segment of the road is also a boundary of the Paria-Hackberry wilderness study area ("WSA") and lands BLM has identified as possessing wilderness characteristics. The construction and installation of an engineered bridge at Bull Valley Gorge will unlawfully impair and impact the Paria-Hackberry WSA and impact the Grand Staircase-Escalante National Monument.

5. As set forth below, BLM's decision that it had no role to play in evaluating and approving the County's proposed improvement and to instead allow construction activities to proceed without BLM approval was arbitrary and capricious.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief); and the Administrative Procedure Act ("APA") 5 U.S.C. §§ 501-706.

7. Venue is proper in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(e)(1) because the statutory violations alleged herein all occurred within the State of Utah.

8. BLM's decision to allow Kane County to install an improved, engineered bridge across Bull Valley Gorge on the Skutumpah Road, without following the required administrative procedure for approval, constitutes final agency action.

## PARTIES

9. Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE ("SUWA") is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness and other spectacular public lands found throughout Utah, including those

surrounding the Skutumpah Road, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA is headquartered in Salt Lake City, Utah and has members in all fifty states and several foreign countries. SUWA's members use and enjoy public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood. SUWA promotes local and national recognition of the region's unique character through research and public education, and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA brings this action on its own behalf and on behalf of its members.

10. SUWA and its members' interests have been directly affected and irreparably harmed, and continue to be affected and harmed, by BLM's decision to allow Kane County to proceed with the installation of an improved, engineered bridge across Bull Valley Gorge without BLM approval—in violation of FLPMA, NEPA, and their implementing regulations, as well as the proclamations establishing and reducing the Grand Staircase-Escalante national monument and the APA. SUWA members frequently visit the abutting Grand Staircase-Escalante National Monument, Paria-Hackberry WSA, and Bull Valley Gorge itself and recreate throughout those places.

11. Mr. Ray Bloxham, an employee and member of SUWA, has traveled the Skutumpah Road, viewed and hiked in Bull Valley Gorge, and recreated on the federal public lands adjacent to the Road, including the Grand Staircase-Escalante National Monument and Paria-Hackberry WSA, on numerous occasions over the past several years, including most recently in October 2019. Mr. Bloxham particularly enjoys the solitude and scenic views, as well

as hiking and photographing the lands surrounding Bull Valley Gorge. Mr. Bloxham has plans to return to this area again in the fall of 2020, and intends to continue to visit the area for years to come.

12.     Ms. Kya Marienfeld, an employee and member of SUWA, has traveled the Skutumpah Road across Bull Valley Gorge and hiked in the gorge itself. She has also recreated and viewed the solitude, unique geology, and wildlife on the federal public lands on either side of the Bull Valley Gorge bridge in the Grand Staircase-Escalante National Monument and Paria-Hackberry WSA. Ms. Marienfeld most recently visited this area in October 2019 and plans to return in the late summer or early fall of 2020, and intends to continue the visit the area 1-3 times per year for the foreseeable future.

13.     As a result of BLM's legal failings, the construction activities, along with the resulting impacts to the Grand Staircase-Escalante National Monument and Paria-Hackberry WSA, will adversely alter the remote and rugged nature of the lands and resources surrounding the route. This will impair Plaintiff's staffs' and members' use and enjoyment of the federal public lands contiguous and nearby to the Bull Valley Gorge bridge, as well as Bull Valley Gorge itself. SUWA and its members also have a substantial interest in seeing that BLM complies with its land management standards and obligations under federal laws including FLPMA, NEPA, their implementing regulations, the monument proclamations, and BLM's own policies in furtherance thereof. The relief sought herein, including an order that BLM comply with NEPA, will redress these harms.

14.     Defendant BUREAU OF LAND MANAGEMENT is the agency within the United States Department of the Interior that is responsible for the management of approximately

twenty-three million acres of federal public land in Utah, including the land at issue in this litigation. BLM is directly responsible for carrying out the Department of the Interior's obligations under statutes and regulations governing land use management. These obligations include complying with FLPMA, which requires the agency to manage public land resources for both present and future generations, and NEPA, which requires the agency to carefully consider the environmental impacts of its actions.

15.     Defendant HARRY BARBER is the BLM's Paria River District Manager and is charged with overseeing BLM's activities in that office. District Manager Barber decided that Kane County's installation of the new, upgraded bridge at Bull Valley Gorge would not require BLM approval.

## FACTS GIVING RISE TO SUWA'S CAUSES OF ACTION

**I.      Skutumpah Road**

16.     The Skutumpah Road is a graded dirt road in Kane County that runs generally east to west, from the Cottonwood Road, just south of Cannonville, to Johnson Canyon. The County has classified the road as a "Class B" road, meaning generally that the County maintains the road to a certain standard and in turn can and does seek reimbursement from the State of Utah for its road maintenance activities.

17.     The Skutumpah Road is presently used for a variety of purposes including ranching, tourism, and facilitating travel in western Kane County. Kane County and the State of Utah jointly hold title to an R.S. 2477 right-of-way for the approximately 33 mile length of the Skutumpah Road. *Kane Cty., Utah (1) v. United States*, No. 2:08-cv-00315-CW, 2011 WL 2489819, at *2 (D. Utah June 21, 2011); *Kane Cty., Utah (1) v. United States*, No. 2:08-cv-

6

00315-CW, 2013 WL 1180764, at *1 (D. Utah Mar. 20, 2013), *rev'd and remanded on other grounds,* 772 F.3d 1205 (10th Cir. 2014).

18. The scope of the County and State's R.S. 2477 right-of-way has not been adjudicated. *Kane Cty. v. United States*, 772 F.3d 1205 (10th Cir. 2014).

## II. Bull Valley Gorge

19. The eastern extent of the Skutumpah Road crosses Bull Valley Gorge, a narrow slickrock canyon. The crossing was comprised of compacted native material, including dirt and rock. In 1954, a truck slid off the Skutumpah Road, became lodged in Bull Valley Gorge, and remains partially in place today.

20. Bull Valley Gorge is a popular hiking and sightseeing destination. The gorge and the portion of the Skutumpah Road across it are within the original Grand Staircase-Escalante National Monument, established by President Clinton, and form a boundary of the reduced monument, as modified by President Trump. The Paria-Hackberry WSA borders the Skutumpah Road to the south at Bull Valley Gorge crossing, and lands BLM has identified as having wilderness character lie to the north.

21. BLM's Grand Staircase-Escalante National Monument management plan (2000) contemplated "allow[ing a] new crossing for safety at Bull Valley Gorge." Plan at 47. The plan noted that a future decision to widen the crossing may be allowed, subject to BLM's WSA policies. The plan does not approve a particular course of action regarding the new crossing. BLM's Grand Staircase-Escalante National Monument and Kanab-Escalante Planning Area management plan (2020) incorporated the 2000 plan's decision with regard to the Skutumpah Road and Bull Valley Gorge crossing. Plan at 2-59.

7

### III.    A New, Engineered Bridge at Bull Valley Gorge Crossing

22.     In March 2019, a storm event washed out a large portion of the earthen crossing at Bull Valley Gorge and made the crossing unsafe to travel with motorized vehicles.

23.     Based on information and belief, from March 2019 through May 2020 Kane County and BLM engaged in a dialogue about repairing or replacing the crossing at Bull Valley Gorge. The options discussed included repairing the earthen bridge, utilizing a temporary "Bailey"-style bridge (a portable, prefabricated bridge), or improving the crossing by installing a new, permanent engineered bridge.

24.     On May 8, 2020 Kane County's GIS and Transportation Director, Mr. Louis Pratt, sent a letter to BLM's Kanab field office manager, Mr. Whit Bunting, stating that the County intended to proceed with the installation of a new, engineered bridge. Mr. Pratt's letter explains that "[t]he project will consist of engineered concrete headwalls poured in place to establish the base on either side of the gorge. Kane County will contract out the footings and assembly of the bridge structure to be placed across the gorge and dropped into place on the concrete footings. (see enclosed plans)." Mr. Pratt further explained "Kane County will utilize borrow/imported fill to allow traffic to safely cross the replaced bridge structure," and noted that all proposed disturbance would be within the width of the current disturbed area. Mr. Pratt further stated that "[r]eplacing the bridge with a new engineered structure is the only way at this time to ensure future public safety needs." A copy of Mr. Pratt's May 8, 2020 letter is attached hereto as Exhibit A.

25.     SUWA obtained a copy of the plans Kane County submitted to BLM for the engineered bridge through a Freedom of Information Act request to BLM's Utah State Office.

The plans make clear that in addition to concrete footings, the engineered bridge will require excavation and a change to the vertical alignment of the Skutumpah Road. The new engineered bridge will also have a metal travel surface, as opposed to the prior earthen surface.

26. On June 8, 2020 SUWA sent a letter to BLM's Acting Utah State Director and Paria River District Manager regarding Kane County's proposal. SUWA explained that the County's proposal constituted an improvement to the Skutumpah Road and was not merely maintenance. SUWA also noted that the scope of the State and County's R.S. 2477 right-of-way had not yet been adjudicated and reminded BLM that it needed to comply with NEPA and FLPMA as part of its review of the County's proposal. SUWA suggested that BLM and Kane County include SUWA in the discussions regarding the proposed improvement. A copy of SUWA's June 8, 2020 letter is attached hereto as Exhibit B.

27. SUWA also forwarded a copy of its June 8 letter to BLM to attorneys representing Kane County and the State of Utah and invited a dialogue between SUWA, Kane County, the state of Utah, and BLM. Neither Kane County nor Utah substantively responded to SUWA's letter.

28. On June 22, 2020 acting associate state director Abbie Josie responded to SUWA's letter in an email stating that BLM was "still reviewing and considering the request from the county. No decisions have been made."

29. On June 30, 2020 Mr. Pratt sent a follow-up letter to BLM manager Bunting and informed him that Kane County had awarded a contract for the new bridge and stated "the county will proceed with the replacement to reopen the road – especially before winter

conditions make it impossible to finish the work for another year." A copy of Mr. Pratt's June 30 letter is attached hereto as Exhibit C.

30. On July 13, 2020 SUWA was notified in an email from the U.S. Department of Justice that "BLM has informed us that the [County's] proposal to replace the bridge does not require approval by the BLM," and directed questions regarding this decision to BLM's Paria River district manager, Mr. Barber. A copy of this email, which was provided pursuant to a Notice Order in a separate matter, is attached hereto as Exhibit D.

31. On July 14, 2020 attorneys representing SUWA spoke with BLM manager Barber regarding this matter, and on July 16, 2020 these same attorneys for SUWA sent a letter to Mr. Barber summarizing the call. SUWA's letter refuted Mr. Barber's contention that the new engineered bridge constituted maintenance of, rather than improvement to, the Skutumpah Road, citing the Tenth Circuit's opinion in *Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.* ("*SUWA v. BLM*"), 425 F.3d 735 (10th Cir. 2005) and BLM's own guidance on this matter. A copy of SUWA's July 16, 2020 letter is attached hereto as Exhibit E.

32. Based on information and belief, contractors acting on behalf of Kane County began surface disturbing operations related to the new bridge on or around the week of July 13, 2020. These activities include, but are not limited to, vertical realignment of the Skutumpah Road and the pouring of cement footings.

33. BLM did not prepare a NEPA document (an environmental impact statement, environmental assessment, or categorical exclusion) prior to deciding that the County's proposal did not require agency approval.

### IV. Consultation Regarding Improvements to Adjudicated R.S. 2477 Rights-of-Way

34. The Tenth Circuit has stated that "construction of improvements" of R.S. 2477 rights-of-way include "the horizontal or vertical realignment of the road …. as well as any significant change in the surface composition of the road (e.g. going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any 'improvement,' 'betterment,' or any other change in the nature of the road that may significantly impact [public] lands, resources, or values." *SUWA v. BLM*, 425 F.3d at 748-49 (quoting *United States v. Garfield Cty.*, 122 F. Supp. 2d 1201, 1253 (D. Utah 2000)).

35. In contrast, the Tenth Circuit has explained that maintenance "'preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road . . . essentially preserving the status quo.'" *Id.* (quoting *Garfield Cty.*, 122 F. Supp. 2d at 1253).

36. BLM's internal guidance regarding improvements to R.S. 2477 rights-of-way, Instruction Memorandum (IM) No. 2008-175, relies essentially verbatim on the Tenth Circuit's definition in *SUWA v. BLM* of maintenance and improvements. BLM Instruction Memorandum No. 2008-175, Consultation Process on Proposed Improvements to Revised Statute (R.S.) 2477 Rights-of-Way (Aug. 8, 2008) at 2-3. A copy of Instruction Memorandum 2008-175 is attached hereto as Exhibit F.

37. If title to an R.S. 2477 claim has been adjudicated under the Quite Title Act, the holder of the right-of-way must consult with BLM before it undertakes improvements to the right-of-way. *See Kane Cty.*, 772 F.3d at 1224-25. No consultation is required for the R.S. 2477 right-of-way holder to conduct merely routine maintenance. *Id.*

38. The goal of consultation is to allow BLM to determine if the proposed improvement is "reasonable and necessary" and within the scope of the existing right-of-way, and thus part of a valid existing right. *Id*. *See also* IM 2008-175, at 4-7 (outlining multi-step consultation process).

39. Consultation provides an opportunity for BLM to comply with its obligations under FLPMA "to take any action necessary to prevent unnecessary or undue degradation of the [public] lands" and prevent impairment to the Paria-Hackberry WSA, 43 U.S.C. §§ 1732(b), 1782(c), as well as its obligation under the 1996 and 2017 Grand Staircase-Escalante National Monument proclamations to protect monument objects.

40. If, through the consultation process, BLM determines that improvements go beyond the scope of an R.S. 2477 right-of-way and not part of a valid existing right, the holder must apply for and obtain a separate right-of-way authorization under FLPMA Title V, 43 U.S.C. §§ 1761–1772, and its implementing regulations.

41. BLM erroneously decided Kane County's installation of a new, engineered bridge constituted maintenance and not improvement to the Skutumpah Road. As a result, BLM did not engage in consultation with Kane County about the proposed improvement. Consequently, BLM did not consider the environmental impacts of the improvement, whether the improvement would degrade or impair surrounding federal lands, or decide whether the improvement fell within the scope of the county's right-of-way. These failures violated BLM's legal obligations.

**First Cause of Action**
**Violation of FLPMA, Monument Proclamations, and APA**
*(Arbitrarily Deciding Installation of the New Bridge was Maintenance)*

42. SUWA incorporates by reference all preceding paragraphs.

12

43. FLPMA and its implementing regulations require BLM to regulate the use, occupancy, and development of public lands. 43 U.S.C. §1732(b).

44. FLPMA directs BLM to "take any action necessary to prevent unnecessary or undue degradation of the [public] lands." *Id.*

45. FLPMA directs BLM to manage WSAs "in a manner so as not to impair the suitability of such areas for preservation as wilderness." *Id.* § 1782(c).

46. The 1996 Grand Staircase-Escalante National Monument Proclamation, as well as the 2017 proclamation modifying it, direct BLM to protect Monument objects.

47. An R.S. 2477 right-of-way holder may undertake routine maintenance of the right-of-way without first consulting and receiving authorization from BLM.

48. In contrast, an R.S. 2477 right-of-way holder's proposed improvement to the right-of-way requires consultation between BLM and the holder to evaluate the proposal.

49. Before allowing a proposed improvement to an R.S. 2477 right-of-way as an exercise of a valid existing right, BLM must determine if the improvement is within the scope of the right-of-way and thus part of a valid existing right. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1086 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

50. "If the BLM determines that a proposed improvement is within the scope of an R.S. 2477 right-of-way it must assess whether the proposed improvement may adversely impact the surrounding public lands or resources and, if so, whether there are alternatives or modifications to the proposed improvement that would avoid or minimize such impacts." IM

13

2008-175, at 6. *See SUWA v. BLM*, 425 F.3d at 748. This consultation process is intended to further BLM's land management responsibilities.

51. BLM improperly determined Kane County's proposed installation of a new engineered bridge was maintenance of the County's right-of-way, and not an improvement.

52. BLM failed to determine whether Kane County's proposed improvement to the Skutumpah Road was within the scope of the County's R.S. 2477 right-of-way.

53. Alternatively, to the extent BLM concluded that the proposed improvement was within the scope of the right-of-way by relying on the County's argument that the installation of the new bridge, the change in vertical alignment to the road, and the new concrete footings were allegedly within the current disturbed width, that conclusion was erroneous.

54. BLM did not fulfill its land management responsibilities to prevent impairment to the Paria-Hackberry WSA, harm to monument objects in the Grand Staircase-Escalante National Monument, and unnecessary or undue degradation to all the lands it oversees.

55. BLM's determination that Kane County's proposed installation of a new, engineered bridge at Bull Valley Gorge crossing on the Skutumpah Road constituted maintenance of the County's R.S. 2477 right-of-way, and that the County could thus proceed with surface disturbing activities, without BLM approval, was arbitrary, capricious, and contrary to law in violation of 5 U.S.C. § 706(2)(A).

## Second Cause of Action
## Violation of FLPMA and APA
*(Failure to Determine if the Improvement was a Valid Existing Right)*

56. SUWA incorporates by reference all of the preceding paragraphs.

57. FLPMA and its implementing regulations require BLM to regulate the use, occupancy, and development of public lands. 43 U.S.C. §1732 (b).

58. The use, occupancy, or development of public lands in a manner contrary to any applicable regulation is unlawful and prohibited. 43 U.S.C. § 1733(g).

59. When authorizing road improvements, BLM must comply with the requirements and procedures contained in Title V of FLPMA and its implementing regulations. 43 U.S.C. §§ 1761–72; 43 C.F.R. Part 2800.

60. BLM is not required to issue a new right-of-way permit under Title V prior to road construction only if it determines the improvement will occur within the scope a "valid existing right." 43 U.S.C. § 1701; Pub. Law 94-579, §701 note (h).

61. Kane County holds an adjudicated R.S. 2477 right-of-way to the Skutumpah Road, but the scope of the right-of-way has not yet been adjudicated or otherwise determined.

62. BLM's approval of construction of a new, engineered bridge on the Skutumpah Road without first determining whether the improvement fell within this scope of the right-of-way violated FLPMA's Title V provisions and implementing regulations, and was arbitrary, capricious, and contrary to the law in violation of 5 U.S.C. §706(2)(A).

## Third Cause of Action
## Violation of NEPA and APA
*(Failure to Take a Hard Look at Environmental Impacts)*

63. SUWA incorporates by reference all the preceding paragraphs.

15

64. NEPA requires BLM to analyze environmental consequences before initiating actions that potentially affect the environment. 42 U.S.C. § 4332(2)(C). It may do so in an environmental impact statement (EIS), environmental assessment (EA), or categorical exclusion (CX), but cannot exempt itself from complying with NEPA.

65. An agency may prepare an EA to determine whether an EIS is necessary, 40 C.F.R § 1501.3, but if an agency decides not to prepare an EIS, an EA must provide "sufficient evidence" that a full EIS is not necessary. *Id.* § 1508.9. In certain limited circumstances BLM may also prepare a categorical exclusion to document its compliance with NEPA. *Id.* § 1501.4.

66. The threshold to trigger environmental analysis under NEPA is relatively low, requiring only a substantial question as to whether an action may cause environmental impacts sufficient to trigger NEPA.

67. BLM must both take a "hard look" at potential environmental consequences of its actions and make the relevant information available to the public.

68. Under NEPA, federal agencies must consider the direct, indirect and cumulative environmental impacts of a project. 40 C.F.R. §§ 1508.8, 1508.25(c).

69. To comply with NEPA's hard look requirement, BLM's analysis must involve informed decisionmaking and informed public participation, along with discussion of possible effects and risks.

70. BLM violated NEPA and its implementing regulations by exempting itself from complying with the statute and by failing to take a hard look at impacts from Kane County's installation of a new engineered bridge at Bull Valley Gorge to a variety of resources, including

but not limited to, the Paria-Hackberry WSA and Grand Staircase-Escalante National Monument.

71. BLM also violated NEPA and its implementing regulations by failing to take a hard look at impacts from the new bridge and reasonably foreseeable improvements to the Skutumpah Road, including Kane County's proposal to pave four miles of the road near Johnson Canyon and/or gravel the road to approximately Deer Springs Ranch.

72. BLM's failure to take a hard look at environmental impacts violated NEPA and its implementing regulations and was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court enter judgment in its favor and against Defendants the Bureau of Land Management and Harry Barber, in his official capacity as the Paria River District Manager of the Bureau of Land Management; and that the Court:

(1) Declare that Defendants have violated FLPMA, BLM Instruction Memorandum 2008-175, and the APA, as set forth above;

(2) Declare that Defendants have violated NEPA as set forth above;

(3) Award injunctive relief directing Defendants to consult with Kane County about its improvement to the Skutumpah Road and determine if the improvement is within the scope of the County's right-of-way;

(4) Award injunctive relief directing Defendants to prepare a NEPA analysis regarding the installation of an engineered bridge at Bull Valley Gorge along the Skutumpah Road;

(5)  Award injunctive relief directing Defendants to prohibit further construction activities until BLM has complied with FLPMA and NEPA as set forth above.

(6) Retain jurisdiction of this action to ensure compliance with its decree;

(7) Award Plaintiff's costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(8) Grant such other and further relief as is proper.

Dated: July 29, 2020

Respectfully submitted,

/s/ Stephen Bloch
_____

Stephen H.M. Bloch
Michelle White
Joseph J. Bushyhead
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
(801) 486-3161

Trevor Lee
MANNING CURTIS BRADSHAW & BEDNAR
136 E. South Temple, Suite 1300
Salt Lake City, UT  84111
(801) 363-5678

Attorneys for Plaintiff
Southern Utah Wilderness Alliance