FILED
2021 MAY 27 PM 12:02
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT, et al.,**<br><br>**Defendants.** | **ORAL ARGUMENT ORDER**<br><br>**Case No. 2:20-cv-00539-JCB**<br><br>**Magistrate Judge Jared C. Bennett** |

This matter is before the court on a Motion for Review of Agency Action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Plaintiff, Southern Utah Wilderness Alliance ("SUWA"), challenges the Bureau of Land Management's ("BLM") determination that Kane County's bridge replacement on the Skutumpah Road was "maintenance" instead of an "improvement." SUWA asks the court to consider the following: (1) whether the BLM violated the Federal Land Policy and Management Act ("FLPMA"), 42 U.S.C. §§ 1701 to 1787, by not engaging in a consultation process with Kane County prior to the bridge's replacement; and (2) whether the BLM violated the requirements of the National Environmental Policy Act ("NEPA") by not conducting any environmental analysis under the NEPA's implementing regulations before the bridge replacement occurred.

The court has read the Opening, Answer, and Reply Briefs and reviewed the administrative record submitted therewith. In its review, the court has identified certain issues

that are not addressed in the briefing that it intends to address at oral argument on June 2, 2021.

The court orders the parties to come prepared to discuss the following issues:

1.      Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction "at any stage in the litigation." *Id.* at 506. Given that the bridge at issue was completed in July 2020, the court desires argument on whether this action is now moot both under Article III and the doctrine of prudential mootness.  In determining whether this action is moot, the court requests guidance from the parties as to whether this action is capable of repetition yet evading review.

2.      Section 706 of the APA allows a reviewing court to set aside agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise *not in accordance with law*." 5 U.S.C. § 706(2)(A) (emphasis added). Courts interpret "not in accordance with law" to mean that "[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'" *El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) (second alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)). "Thus, although the plaintiff need not demonstrate that the substantive statute independently waives federal sovereign immunity, . . . the plaintiff must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies to the United States." *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996) (emphasis in original). SUWA contends that the BLM's duty to consult with Kane County stems from the

FLPMA. However, neither party identifies the section of the FLPMA or its implementing

regulations that impose a consultation duty upon the BLM. Instead, the parties mention two non-

FLPMA sources for this duty: (1) the BLM's Instruction Memorandum 2008-175 ("IM"); and

(2) *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir.

2005) ("Consultation Case").

        First, the IM is a statement of agency policy and, as such, is neither "a statute" nor "a

regulation" and, therefore, is not binding upon the agency. *AMREP Corp. v. Fed. Trade

Comm'n.*, 768 F.2d 1171, 1178 (10th Cir. 1985) ("It is elementary administrative law that in

order for [an agency policy statement] to have binding force there are only two methods that an

agency may use in formulating policy. It may establish binding policy either through rule-

making procedures or through adjudications that create binding precedents."); *Vietnam Veterans

of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988) ("A binding policy is an

oxymoron."). Therefore, the court seeks guidance on whether the provisions in the IM are

enforceable under the APA—i.e., whether the IM could serve as the "law" on which the court

could base a determination of arbitrary and capricious action.

        Second, the Consultation Case provides that the duty to consult stems as common law,

and not statutory.  *S. Utah Wilderness All.*, 425 F.3d at 746 (relying on "common law principles

governing easements" and stating that "[t]he principle that the easement holder must exercise its

rights so as not to interfere unreasonably with the rights of the owner of the servient estate,

derives from general principles of the common law of easements rather than the peculiar status

of National Parks"); *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988) (explaining that

"Utah adheres to the general rule that the owners of the dominant and servient estates must

3

exercise [their] rights so as not unreasonably to interfere with the other" and, therefore, the

federal land management agency and the county must coordinate with one another) (alteration in

original) (quotations and citations omitted)).

Given the Consultation Case's reliance on common law—not the FLPMA—for the duty

to consult, the court has two concerns. As a threshold matter, the court is unaware of any case in

which agency action has been found "arbitrary, capricious, . . . or otherwise not in accordance

with law" where the "law" is common law instead of a statute or regulation. Consequently, the

court would like to discuss at oral argument whether common law can supply the basis of law for

finding agency action arbitrary and capricious under section 706(2)(A).

Additionally, the court has concerns whether it has the authority to impose additional

legal requirements upon an agency that neither Congress nor the agency have imposed. The

reason for the court's concern stems from *Vermont Yankee Nuclear Power Corp. v. Natural

Resources Defense Council, Inc.*, 435 U.S. 519 (1978). In *Vermont Yankee*, the Court of Appeals

for the District of Columbia Circuit imposed upon the agency additional procedures that the

relevant statute governing the agency did not. The United States Supreme Court unanimously

reversed the decision and chided the D.C. Circuit for "fundamentally misconceiv[ing]" the nature

of judicial review. *Id.* at 547. The Court held that "this sort of unwarranted judicial examination

of perceived procedural shortcomings of a rulemaking proceeding can do nothing but seriously

interfere with that process prescribed by Congress." *Id.* at 548. The Supreme Court again

corrected the appeals court for having held that the agency may be required "to develop new

procedures to accomplish the innovative task of implementing NEPA through rulemaking." *Id.* at

548 (quotations and citation omitted).  The Court responded that "we search in vain for

something in NEPA which would mandate such a result," and then said:

> In short, nothing in the APA, NEPA, the circumstances of this case, the
> nature of the issues being considered, past agency practice, or the statutory
> mandate under which the Commission operates permitted the court to
> review and overturn the rulemaking proceeding on the basis of the
> procedural devices employed (or not employed) by the Commission so long
> as the Commission employed at least the statutory *minima*, a matter about
> which there is no doubt in this case.

*Id.* Thus, *Vermont Yankee* appears to preclude federal courts from using the APA to require

agencies to engage in procedures that neither Congress nor the agency itself requires. Notably,

the Supreme Court does not mention "common law" as a source of agency duties for purposes of

judicial review under the APA, but rather the concern is centered on whether the agency

"employed at least the statutory *minima*." *Id.* And where the duty to consult does not appear to

arise from the FLPMA, the court desires guidance at oral argument on whether the Consultation

Case's statements regarding consultation with Kane County can be enforced under the APA in

this case.

To be clear, this court is not insinuating that the Consultation Case's statements regarding

the common law consultation duty are wrong as a matter of law. To the contrary, the United

States, like any other landowner, may be subject to common law duties regarding the use of

easements and the servient estate. *Light v. United States*, 220 U.S. 523, 536-37 (1911) (stating

that "[t]he Government has, with respect to its own lands, the rights of an ordinary

proprietor . . . . It may deal with such lands precisely as a private individual may deal with his

farming property."). However, that is not the question in this litigation. The question here is

whether a party that is not involved in that dominant/servient estate consultation process can use

the APA to reverse an agency decision and effectively compel a consultation process not

imposed by Congress or the agency. Indeed, where Congress wants an agency to engage in

consultation, Congress clearly knows how to do it, *see, e.g.*, 16 U.S.C. § 1536(a), and courts

know how to enforce it under the APA's arbitrary and capricious standard. *See, e.g. W.*

*Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (applying APA § 706

standard of review for failure to consult claim under the Endangered Species Act). That neither

Congress nor the agency appears to have imposed a consultation requirement concerns the court

as it wrestles with how the APA's judicial review standard applies here.

    IT IS SO ORDERED.

    DATED this 27th day of May 2021.

                BY THE COURT:

                _____

                JARED C. BENNETT
                United States Magistrate Judge