FILED
2021 SEP 30 PM 4:00
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT and HARRY BARBER, in his official capacity as Paria River District Manager,<br><br>Defendants, and<br><br>STATE OF UTAH and KANE COUNTY, UTAH,<br><br>Proposed Intervenor-Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:20-cv-00539-JCB<br><br><br>Magistrate Judge Jared C. Bennett |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1] Before the court is Kane County, Utah's ("County") "Notice," which asks this court to recuse under 28 U.S.C. §455.[2] However, the "Notice" is actually a motion because it requests relief. But asking for the parties to respond to the County's motion is unnecessary because the court has

---

[1] ECF No. 13.

[2] ECF No. 35.

carefully reviewed the arguments in the County's recusal motion and, under DUCivR 7-1(f), concludes, without oral argument, that the County's motion lacks merit.

## ANALYSIS

A "well-informed, thoughtful and objective observer who is an average member of the public"[3] would not reasonably question the court's impartiality in this action. 28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." The judge's subjective state of mind is not the focus of this inquiry.[4] Instead, section 455(a) provides "an objective standard: disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality."[5] A reasonable person would be justified in harboring doubts about a judge's impartiality where the judge "knew [or appears to have known] of facts creating an appearance of impropriety."[6] The attitude of the "reasonable person" making the partiality determination is that of "a well-informed, thoughtful and objective observer" who "is an average member of the public" and not "a "hypersensitive, cynical, and suspicious person."[7]

To provide this well-informed, thoughtful, and non-cynical reasonable person with the information necessary to determine whether the judge knew of facts creating the appearance of

---

[3] *United States v. Wells*, 873 F.3d 1241, 1251 (10th Cir. 2017) (citations and quotations omitted).

[4] *Id.*

[5] *Id.* (citations and quotations omitted).

[6] *Id.* (citations and quotations omitted).

[7] *Id.* (citations and quotations omitted).

2

impropriety, the court begins by "asking whether a reasonable factual basis exists for questioning the judge's impartiality" while being "mindful that cases with § 455(a) are extremely fact driven and must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[8] Additionally, the court must keep in mind that "[j]udges not only have a strong duty to recuse when appropriate, but also a strong duty to sit, and [§ 455(a)] must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."[9] With this standard in mind, and having carefully considered the history, unique facts, and circumstances presented, the court finds that a well-informed, thoughtful, and objective observer, who is an average member of the public, would not reasonably question the court's impartiality in this case.

The County factually avers that the undersigned once served as counsel for the Bureau of Land Management ("BLM") in litigation that it filed against Kane County in 1996 after the County "bladed a number of roads" across federal public land under the auspices of maintaining the County's R.S. 2477 right of way.[10] Some of the County's road maintenance occurred on a stretch of the Skutumpah Road near Bull Valley Gorge.[11] The Southern Utah Wilderness Alliance ("SUWA") participated in the litigation against Kane County. The County then recites BLM's

---

[8] *Id.* (citations and quotations omitted).

[9] *Id.* (citations and quotations omitted).

[10] ECF No. 35 at 3.

[11] ECF No. 35 at 3.

litigation positions before the district court. The County also points out that the United States Court of Appeals for the Tenth Circuit reversed and remanded the district court's decision, which had agreed with portions of BLM's litigation position.[12] After remand from the Tenth Circuit, the parties litigated a few matters for approximately seven months before agreeing to dismiss the action on August 30, 2006.[13] Although the County does not mention it, the undersigned first appeared in the 1996 action in May 2006, three months before the litigation terminated.[14]

The County then fast forwards 15 years to the current case and points out that, like the 1996 action, the Skutumpah Road near the Bull Valley Gorge is at issue in this action. The County adds that because this court's decision on July 2021 held that BLM had failed to carry out its statutory duties for this portion of the Skutumpah Road at the Bull Valley Gorge, both BLM and SUWA are now discussing a remedy. This discussion, the County claims, is problematic because BLM and SUWA "were forever hostile to Kane County's interest in the Skutumpah Road."[15] The County then asserts that because the undersigned was counsel for one of the parties that is "forever hostile to Kane County's interest in the Skutumpah Road," a

---

[12] ECF No. 35 at 3.

[13] *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 2:96cv836, ECF No. 493.

[14] *S. Utah Wilderness All.*, 2:96cv836, ECF No. 465. The court notes that the lone document that the undersigned filed in that action was an opposition to SUWA amending its complaint to bring new claims against BLM. In fact, that memorandum argued against SUWA's claims seeking to compel BLM to take action against Kane County for allegedly past trespass violations. *Id.* at 6, 7 n.2.

[15] ECF No. 35 at 4.

reasonable person would believe that the undersigned is too, and therefore the undersigned should recuse from this action.

The County's selection of facts and the credible inferences derived therefrom are insufficient to persuade a well-informed reasonable person that the undersigned is partial against the County. For starters, the current action does not involve any allegation of County wrongdoing. Instead, this action revolves around whether BLM fulfilled its statutory obligations pertaining to a Wilderness Study Area adjacent to Bull Valley Gorge. Additionally, whereas the County's claim to an R.S. 2477 right of way had not been adjudicated in the 1996 action, the County's R.S. 2477 right of way along the Skutumpah Road (including the Bull Valley Gorge) is now a judicially determined fact.[16] As the owner of that R.S. 2477 right of way, the County has the common law right to maintain it. Yet, as the Tenth Circuit previously recognized, BLM also has independent statutory obligations that it must fulfill when the County takes an action to maintain or improve its right of way.[17] Whether BLM fulfilled those duties is the sole question in this action. And that issue is entirely different from the issue in the 1996 litigation. Given these

---

[16] *Kane County v. United States*, No. 08-cv-315, 2011 WL 2489819, *8 (D. Utah June 21, 2011) aff'd in part and rev'd in part *Kane County v. United States*, 772 F.3d 1205, 1223-24 (10th Cir. 2014).

[17] *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 747 (10th Cir. 2005) ("Just as the National Park Service has obligations to protect National Park land, the BLM has obligations to protect the land over which the roads at issue here pass. . . . Unless it knows in advance when right-of-way holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities . . . ."); *Sierra Club v. Hodel*, 848 F.2d 1068, 1089-91 (10th Cir. 1988) (finding that BLM had independent statutory duties under the National Environmental Policy Act and the Federal Land Policy and Management Act pertaining to the maintenance of an R.S. 2477 right of way).

differences between the 1996 action and this one, it is not surprising that the County elected not to seek intervention in this action until now. A reasonable person who is informed of these facts would not see this action as anything like the 1996 action.

Despite these significant differences between the 1996 action and the present action, the County appears to contend that the court's alleged partiality might be manifest against the County in the forthcoming remedy that the court will order for BLM's failure to follow its statutory obligations.[18] And the apparent basis for this belief is, 15 years ago—for a period of three months at the tail-end of litigation that spanned a decade—the undersigned represented a party that is "forever hostile" to Kane County's interest in the Skutumpah Road. In other words, the County infers and suggests that because BLM is "forever hostile" to Kane County's interest in the Skutumpah Road, its former attorney must be too. The inferences that the County draws are both unfounded and akin to the cynical, hypersensitive, and suspicious attitude that the reasonable person determining judicial recusal must eschew.[19]

The first factual deficiency is the County's argument is that BLM is "forever hostile" to the County's interests in the Skutumpah Road. This assertion is problematic because courts must "start out with the presumption that [Government] official[s] act[] in good faith," and "well-nigh irrefragable proof" is needed to prove the absence of good faith.[20] The County presents no proof

---

[18] ECF No. 35 at 3.

[19] *Wells*, 873 F.3d at 1251.

[20] *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 765 (2005) (citations and quotations omitted); *see also Comcast Corp. v. F.C.C.*, 526 F.3d 763, 769 n. 2 (D.C. Cir. 2008) ("We must presume an

at all, much less "well-nigh irrefragable proof," that BLM is "forever hostile" to the County's interests on the Skutumpah Road. In fact, the most recent evidence of BLM's institutional feelings toward the County's interests in the Skutumpah Road is a lack of hostility. Indeed, BLM did not raise a single objection to the County's installation of a new steel bridge at Bull Valley Gorge on the County's adjudicated R.S. 2477 right of way, which precipitated this lawsuit. BLM's acquiescence in the case at bar is the antithesis of "hostile."[21] Thus, a well-informed, objective, reasonable person would not find that the undersigned's former client (i.e., BLM) is "forever hostile" to the County's interests in the Skutumpah Road.

The second factual problem with the County's argument is that even if the court were to assume counter-factually that BLM is "forever hostile" to the County's interests along the Skutumpah Road, there is nothing to suggest that the *undersigned* is tainted by the same hostile feeling against the County's interest in the Skutumpah Road. Indeed, the County has not provided a single fact other than the undersigned's prior representation of BLM in a case 15 years ago to show that the undersigned has any hostility (either ephemeral or "forever") toward the County's now adjudicated R.S. 2477 right of way along the Skutumpah Road. Without more,

---

agency acts in good faith . . . ."); *Utah Env't Cong. v. MacWhorter*, No. 08-CV-118, 2011 WL 4901317, at *7 (D. Utah Oct. 14, 2011) ("[G]overnment officials are presumed to act in good faith, and 'it requires "well-nigh irrefragable proof" to induce the court to abandon the presumption of good faith[.]'" (citations omitted)); *Adair v. England*, 183 F.Supp.2d 31, 60 (D.D.C. 2002) ("[G]overnment officials are presumed to act in good faith . . . . [P]laintiff must present 'well-nigh irrefragable proof' of bad faith or bias on the part of governmental officials in order to overcome this presumption") (internal quotations and citation omitted).

[21] *Hostile* THE AMERICAN HERITAGE DICTIONARY (2d ed. 1985) ("Of or pertaining to an enemy. Feeling or showing enmity; antagonistic. Not hospitable.").

no well-informed reasonable person would believe that the court's recent adverse ruling against his former client (i.e., BLM) is merely a ruse that will now allow the undersigned to act out a grudge against the County that he acquired 15 years ago from the client he just ruled against. Therefore, the County's motion lacks merit.

### ORDER

Accordingly, the County's motion to recuse the undersigned is DENIED.

IT IS SO ORDERED.

DATED September 30, 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge